**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| EAGLEWOOD CONSULTING, LLC, | : |
| | : |
| Relator, | : |
| | : CIVIL ACTION NO. |
| v. | : 1:10-CV-03467-RWS |
| | : |
| GRAPHIC PACKAGING INTERNATIONAL, INC., | : |
| | : |
| Defendant. | : |

## **ORDER**

This case is before the Court for consideration of Defendant's Motion to Dismiss in Light of Prior *Qui Tam* Settlement and Agreed Order and Final Judgment [54], Defendant's Motion to Dismiss [14], and Plaintiff's Motion for Leave to File Amended Complaint [45]. After reviewing the record, the Court enters the following Order.

### **Background**

On March 23, 2010, Relator Eaglewood Consulting, LLC ("Eaglewood" or "Relator") filed a *Qui Tam* Complaint for False Marking [1] against Defendant Graphic Packaging International, Inc. ("GPI" or "Defendant") pursuant to 35 U.S.C. § 292. (Dkt. No. [1] at 1). Relator alleged that "Defendant

has engaged in a pattern and practice of marking cardboard boxes with expired, lapsed and clearly inapplicable patents." (Id. at 2). The filing of Relator's Complaint [1] came about three months after San Francisco Technology, Inc. ("SFT") had filed a similar complaint against Defendant. (Dkt. No. [54-1] at 4). In that action, SFT alleged that GPI "falsely marked beverage container products" with some of the same patents alleged to have been falsely marked in the Eaglewood Complaint [1]. (Id.)

On March 3, 2011, parties in the SFT case filed a joint motion for the Court to approve a settlement agreement and enter final judgment. San Francisco Tech., Inc. v. Graphic Packaging Int'l, Inc., No. 1:10-CV-1195-CAP, Dkt. No. [230]. At that time, Eaglewood was still pursuing its *qui tam* action against GPI. On March 4, 2011, the Court granted the joint motion. Id., Dkt. No. [231]. In doing so, the Court ordered that:

> any and all claims by [SFT], the United States of America, *qui tam* relators and/or the general public for any violations of 35 U.S.C. § 292 … based on [Graphic's] marking or advertising of any past or existing product with one or more patent numbers, including but not limited to one or more of the Subject Patents, or with the words "Other Patents Pending" or with language indicating that a product may be covered by a patent, are fully resolved by [the] Agreed Order and Final Judgment and are … dismissed with prejudice.

AO 72A
(Rev.8/82)

Id. at 3. The Court also held that SFT "has a valid statutory assignment of the rights of the United States of America to pursue and dispose of the claims resolved and dismissed" in the Order. Id. at 4. Eaglewood subsequently moved "the Court to alter or amend the Agreed Order and Final Judgment." Id., Dkt. No. [232]. On June 16, 2011, the Court denied Eaglewood's motion. Id., Dkt. No. [237].

After the approval of the SFT settlement agreement, Defendant in this action filed a Motion to Dismiss in Light of Prior *Qui Tam* Settlement and Agreed Order and Final Judgment [54] on April 19, 2011; the motion is sought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. [54-1] at 3).

## Discussion

**I.    Standards**

   A.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct.

3

1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

  B.  Mootness

Federal courts have the authority to decide only actual, ongoing cases or controversies under Article III of the United States Constitution. U.S. CONST. art. III; Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). "The

doctrine of mootness is derived from this limitation because an action that is moot cannot be characterized as an active case or controversy." Adler v. Duval Cnty. Sch. Bd., 112 F. 3d 1475, 1477 (11th Cir. 1997). The central question raised by the mootness doctrine problems is whether changes in the circumstances that existed at the beginning of litigation have forestalled any occasion for meaningful relief. Pub. Serv. Co. of New Hampshire v. Consol. Utils. & Commc'ns, Inc., 846 F.2d 803, 810 (1st Cir. 1998). A claim must be dismissed as moot when effective relief cannot be granted because of later events. Westmoreland v. Nat'l Transp. Safety Bd., 833 F.2d 1461, 1462 (11th Cir. 1987).

## II.     Dismissal of Eaglewood's *Qui Tam* Action

Defendant argues that the Court should dismiss Eaglewood's case because GPI's broad release in the SFT settlement agreement is a valid contract that deprives Eaglewood of standing. (Dkt. No. [54-1] at 5–8). GPI also argues that the final order of the SFT case deprives the Court of subject matter jurisdiction and that "*res judicata* bars Eaglewood from pursuing its claims … because Eagelwood appears here as the representative for the same real-party-in-interest as in the SF Tech Litigation (the United States of America)." (Id. at 8–9).

5

In response, Eaglewood argues that *res judicata* does not apply to it because "SFT and Eaglewood are not identical parties," "SFT did not have the right to settle claims never raised by it or assigned to it," and that the settlement was fraudulently induced.[1] (Dkt. No. [55] at 3–5, 9). Relator also "requests permission to conduct discovery regarding all communications between GPI and SFT concerning [the] settlement" to investigate whether the settlement agreement was fraudulently induced.[2] (Id. at 9). However, because the final judgment in the SFT dispute moots Eaglewood's claims in this action, this action must be dismissed.

Eaglewood's motion to alter or amend judgment in the SF Tech case raised the same question that is relevant to Defendant's Motion to Dismiss [54]: when two or more *qui tam* actions with related or overlapping claims are pending against the same defendant, whether that defendant may enter into a broad release with the plaintiff in one case, such that it moots the other qui tam

---

[1] Eaglewood also argues that GPI's Motion to Dismiss [54] is premature because events were still unfolding in the SFT case. (Dkt. No. [55] at 3). However, in light of the Court's ruling on Eaglewood's motion to alter or amend the final order in that case, Relator's argument is moot in this regard.

[2] The Court denies this request because nothing about SFT or GPI's actions suggest fraud or misconduct. Furthermore, the United States' approval of the agreement makes discovery unnecessary.

6

action. In denying Eaglewood's motion in the SF Tech case, Judge Charles A. Pannell, Jr. answered this question in the affirmative. San Francisco Tech., No. 1:10-CV-1195-CAP, Dkt. No. [237]. The Court agrees with the conclusion and reasoning of Judge Pannell's order in the SF Tech case.

In denying Eaglewood's motion, Judge Pannell noted:

> Applicable case law and 35 U.S.C. § 292 establish that settlement agreements, even those as broad as the one in this case, foreclose other *qui tam* actions for false marking against the same defendant. See Simonian v. Irwin Industrial Tool Co., 2011 WL 147717 (N.D. Ill. Jan. 18, 2011) (upholding a broad release, which "encompassed both known and unknown claims," of liability under Section 292 with regard to defined "Expired Patents"). Section 292 says that a defendant "[s]hall be fined not more than $500 for every such offense," and the statute permits "[a]ny person [to] sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." In effect, private citizens can "file enforcement actions on behalf of the government, in return for a reward for obtaining a money judgment in the government's favor." Simonian, at *4. But the use of the singular "person" in the statutory language means that only one relator can sue and be entitled to a reward. See Simonian v. Quigley Corp., No. 10-C-1259, 2010 WL 2837180, at *2 (N.D. Ill. July 19, 2010) ("[Section 292] contemplates only a single action brought by a private individual on behalf of the United States. Just as the United States could not bring multiple identical actions against a defendant under the false marking statute, multiple private plaintiffs cannot do so on the government's behalf."). Otherwise, several false marking suits would entitle the United States to multiple recoveries and put a heavy burden on defendants in having to litigate against many relators, with no end in sight due to the broad grant of standing under Section 292.
>
> Eaglewood argues that the settlement agreement is too broad because SF Tech had not been assigned the right to settle

7

> Eaglewood's claims [Doc. No. 246, pp. 3-5]. Indeed, other courts have held that a suit is not precluded if the relator in a second *qui tam* action can show that its false marking claims involve different products or patents that are not "substantially similar" to those previously filed by another relator. See Shizzle Pop, LLC v. Wham-O, Inc., No. CV 10-3491 PA, 2010 WL 3063066, at *2 (C.D. Cal. Aug. 2, 2010) (holding that the first-filed rule does not apply because a second *qui tam* action alleged the defendant mismarked a product with a patent different than that in the prior action). However, in Shizzle Pop the first-filed suit had not reached a conclusion. While Eaglewood's Complaint alleges additional false marking claims not alleged by SF Tech, the United States has already settled and released all claims against GPI arising under Section 292, including those Eaglewood seeks to assert in this action.
>
> Nothing in this result is inequitable. Relators in *qui tam* actions are acting on the behalf of the United States. See Stauffer v. Brooks Brothers, Inc., 619 F.3d 1321, 1325 (Fed. Cir. 2010) ("'[*Qui tam*] statute[s] . . . authorize[] someone to pursue an action on behalf of the government as well as himself.'" (quoting Stauffer v. Brooks Brothers, Inc., 615 F. Supp. 2d 248, 253 (S.D.N.Y. 2009)). Although Eaglewood argues that the settlement agreement does not bind it if the agreement does not also bind the United States, the argument fails to recognize the nature of a *qui tam* action. Citing Vermont Agency of Natural Resources v. U.S., 529 U.S. 765 (2000), the Federal Circuit recently opined, "[A] *qui tam* provision operates as a statutory assignment of the United States' rights . . . ." Stauffer, 619 F.3d 1321, 1325. Moreover, 35 U.S.C. § 292 "operates . . . to allow individuals to stand in the government's stead, as assignees of the government's claims." Id. at 1326.

San Francisco Tech., No. 1:10-CV-1195-CAP, Dkt. No. [237], at p. 5-7. The real party in interest is the United States Government, and Eaglewood—as a relator—acts as an agent and a partial assignee of the Government for the purpose of enforcing § 292. Vt. Agency of Natural Res, 529 U.S. at 773 n.4.

8

The settlement agreement, approved by the Court and the United States, gives Defendant a broad release from other § 292 claims, including those asserted by Eaglewood in this action. By releasing GPI from those claims that Eaglewood seeks to assert in this action, the Government has, in effect, revoked the partial assignment of its claim to Eaglewood.

As noted in the SF Tech order:

> Much of the case law on 35 U.S.C. § 292 compares or contrasts its provisions with another *qui tam* provision, the False Claims Act, 31 U.S.C. § 3729 *et seq*. The court notes that the False Claims Act contains several safeguards not found in 35 U.S.C. § 292 for protecting the government's interests, which are succinctly summarized as follows:
>
>> [T]he FCA requires the complaint to be served on the Attorney General, allows the government to intervene within 60 days, keeps the complaint sealed while the Attorney General decides whether to intervene, allows the government to take control of the litigation, and requires Department of Justice approval to dismiss the complaint even if the government has not intervened. *See* 31 U.S.C. § 3730.
>
> Unique Product Solutions, Ltd. v. Hy-Grade Valve, Inc., --- F. Supp. 2d ---, 2011 WL 649998 at *5 (N.D. Ohio Feb. 23, 2011)(vacated and reaffirmed, 2011 WL 924341 (N.D. Ohio Mar. 14, 2011)). Nevertheless, 35 U.S.C. § 290 requires the district court clerk to give notice of any action filed under Title 35 of the United States Code to the Director of the Patent and Trademark Office, a member of the Executive Branch. See Simonian v. Allergan, Inc., 2011 WL 1599292

9

at *5 (N.D. Ill. April 28, 2011). Further, Federal Rule of Civil Procedure 24(a) provides,

> [T]he court **must** permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(emphasis added). This provision has been held to require a court to allow the United States, through the Department of Justice, to intervene in actions filed by *qui tam* relators on behalf of the United States under 35 U.S.C. § 292. See Stauffer, 619 F.3d 1321, 1328-29 (concluding that the government undoubtedly has an interest and that *res judicata* would apply to any claims settled by a relator on behalf of the government such that "disposing of the action would as a practical matter impair or impede the government's ability to protect its interest").

Despite the procedural safeguards contemplated by Title 35 and the Federal Rules of Civil Procedure for false patent marking cases, at least one court has expressed reservations about the potential preclusive effect of allowing *qui tam* relators to settle cases on behalf of the government:

> Even if it does provide the government the right to intervene, Rule 24 of the Federal Rules of Civil Procedure fails to sufficiently protect the government because it does not require that the government actually be served with a False Marking complaint or any relevant pleadings. While 35 U.S.C. § 290 requires each clerk of a district court to "give notice thereof in writing to the Director [of the United States Patent and Trademark Office]" within one month after the filing of a patent action under Title 35, the only information required to be provided are the names and addresses of the parties, name of the inventor, and the designating

10

> number of the patent at issue. The clerk is not even required to provide the statute under which the cause of action has been brought, and it is the Patent Office, rather than the Department of Justice (which would seek to intervene in a lawsuit), that is notified. This hardly constitutes sufficient notice to the government that a False Marking *qui tam* action has been filed. Moreover, by the time the government is informed by the clerk of an action being filed, the case may have already been settled. This presents a unique problem with False Marking *qui tam* actions because relators are likely to be interested in a quick settlement without the delay and expense of protracted litigation. Thus, without even being notified of the *qui tam* action brought on its own behalf, the government may be bound by a settlement and will likely precluded from bringing its own suit under the doctrine of res judicata.

Unique Product Solutions, 2011 WL 649998 at *5 (footnote omitted).

San Francisco Tech., No. 1:10-CV-1195-CAP, Dkt. No. [237], at p. 8-10.

In this action, the concerns articulated by the Unique Product Solutions court are inapplicable. As to the settlement agreement in the SFT case, GPI sought and obtained approval from the Department of Justice. (Dkt. No. [54-10] at 2). John Fargo, the Director of the Intellectual Property Staff with the Commercial Litigation Division of the Department of Justice, reviewed the settlement agreement and stated that the department did "not object to the settlement and the dismissal order." (Id.). In addition, as noted by Judge Pannell:

11

> just as GPI and SF Tech were in communication with the Department of Justice, Eaglewood could have informed the United States of the claims it was bringing. Whether Eaglewood did so is immaterial, however. Either the government had notice of both suits and approved the expansive release language in the settlement agreement anyway or Eaglewood should have better apprised the government of the claims in the Eaglewood Case so the government could have intervened in this case and objected to the expansive settlement language so those claims could go forward.

San Francisco Tech., No. 1:10-CV-1195-CAP, Dkt. No. [237], at p. 10.

Regardless of whether or not the Government had actual notice of this action, it does not change the fact that the Government, through the settlement in the SF Tech case, approved of a release of the claims asserted in this action.

As the SF Tech order notes, the legislative framework of false marking claims may, in certain circumstances, produce perverse incentives:

> The court appreciates the incentives set up by the current procedural framework under the False Marking statute: defendants are encouraged to settle as early as possible and to inject the broadest release language possible into the settlement in order to avoid other *qui tam* suits under Section 292. *Qui tam* relator plaintiffs are encouraged to take the settlement money and agree to any language regardless of how broad it may be and what other claims it precludes.[3] While the procedural framework of the False

---

[3] The incentive would be more troubling in the hypothetical situation where a defendant, faced with a seemingly meritorious suit under 35 U.S.C. § 292 filed by one plaintiff sought out a second plaintiff to sue the defendant and entered a broad settlement agreement with the second plaintiff for an exceedingly low sum. According to the logic of the Unique Product Solutions court, a defendant and a willing agent/second plaintiff could usurp the power and standing of both the first plaintiff and the government before the government even had notice of the first suit. Such a

12

> Claims Act may be preferable because it eliminates such concerns, the court has no power to change the congressional mandate at issue here. Ultimately, the False Marking cause of action belongs to the United States. And, as noted above, there is no question regarding whether the government had actual notice of the SF Tech suit and settlement in that case.  By failing to object to the language of the settlement agreement, the government has, in effect, revoked the partial assignment of its claim to Eaglewood.

San Francisco Tech., No. 1:10-CV-1195-CAP, Dkt. No. [237], at p. 10-11.  The government having revoked the partial assignment to Eaglewood of its claims under Section 292 against GPI, this action is now moot and Eaglewood's claims against GPI are **DISMISSED**.

## Conclusion

In accordance with the Court's discussion above, Defendants' Motion to Dismiss [54] is hereby **GRANTED**. All claims against Defendant are **DISMISSED**, **with prejudice**.  Defendant's Motion to Dismiss [14] and Plaintiff's Motion for Leave to File Amended Complaint [45] are **DENIED as moot**.  The Clerk shall close the case.

**SO ORDERED**, this   20th   day of June, 2011.

_____
**RICHARD W. STORY**
United States District Judge

---

scenario is irrelevant to the current case, however, since the Department of Justice had actual notice and approved of the settlement [in the SF Tech case].

AO 72A
(Rev.8/82)